**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry THOMAS (87–1623), Anthony L. Gaston (87–1634), and Eddie Gaston (87–1697), Defendants–Appellants.**

Nos. 87–1623, 87–1634 and 87–1697.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 14, 1989.

Decided May 25, 1989.

Raymond Mullins (argued) Ypsilanti, Mich., R. Steven Whalen and Patricia Streeter (argued), Detroit, Mich., for defendants-appellants.

Patricia G. Blake, Asst. U.S. Atty. (argued), Detroit, Mich., for plaintiff-appellee.

Before KEITH, MARTIN, and RYAN, Circuit Judges.

KEITH, Circuit Judge.

Defendant co-conspirators Eddie Gaston ("E. Gaston"), Anthony Lorenzo Gaston ("A. Gaston"), and Larry Thomas ("Thomas"), sold heroin under the brand name: "E & Lite." All three defendants were indicted for violations of 21 U.S.C. § 846. Count one charged E. Gaston, A. Gaston, and Thomas with conspiracy to distribute heroin. Count two charged E. Gaston with conspiracy to distribute cocaine. E. Gaston was convicted on both counts, receiving a twenty-five year sentence as a dangerous special narcotics offender on count one, and a fifteen year sentence on count two. A. Gaston was convicted on count one, and received an eight year sentence. Thomas was also convicted on count one, and received a five year sentence. The defendants appeal from the judgment and commitment orders of the district court. For the reasons set forth below, we AFFIRM.

On appeal, defendants claim that the district court failed to protect their personal right to allocution. Thomas and A. Gaston specifically argue that the district court did not comply with Fed.R.Crim.P. 32(a)(1)(C) because the court failed to offer each de-

fendant an opportunity to make a personal statement on his own behalf.

## I

At his trial and sentencing hearing, Thomas was effectively represented by defense counsel. After a preliminary exchange with the prosecutor, the trial judge addressed Thomas personally, as follows:

Mr. Thomas, this is the time set for your sentencing. Either you or [defense counsel] can address the court on your behalf.

Defense counsel responded by arguing that Thomas' role in the conspiracy was far less important than that described by the prosecutor.

A. Gaston was also effectively represented by defense counsel at both his trial and sentencing hearing. The trial judge addressed A. Gaston personally, as follows:

Mr. Gaston, this is the time set for your sentencing. Either you can address the court or [defense counsel] can do it in your behalf.

A. Gaston did not respond. However, after moving to strike portions of the presentence report, defense counsel recalled A. Gaston's background and discussed his potential for rehabilitation.

## II

Rule 32 provides clear direction to the district courts:

(a) Sentence. (1) Imposition of Sentence ... Before imposing sentence the court shall ... (C) address the defendant personally and ask the defendant if the defendant wishes to make a statement in the defendant's own behalf and to present any information in mitigation of punishment.

Fed.R.Crim.P. 32(a)(1)(C).

In addition, the Supreme Court has emphasized that courts should strictly comply with Rule 32 to protect the defendant's personal right to allocution.

[T]o avoid litigation arising out of ambiguous records in order to determine whether the trial judge did address himself to the defendant personally, we think that the problem should be taken out of the realm of controversy. This is easily accomplished. Trial judges before sentencing should, as a matter of good judicial administration, unambiguously address themselves to the defendant. *Hereafter trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing.*

*Green v. United States*, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) (emphasis added). *See also Hill v. United States*, 368 U.S. 424, 426, 82 S.Ct. 468, 470, 7 L.Ed.2d 417 (1962); *Van Hook v. United States*, 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed. 2d 821 (1961).

## III

In the case at bar, we hold that the Rule 32 instruction given by the trial judge to both Thomas and A. Gaston was sufficient to meet the *Green* standards. Although the trial judge specifically invited each defendant *or* his defense counsel to comment individually at the sentencing hearing, the judge's choice of language does not compel the inference suggested by defendants: that they did not understand their personal right to allocution. The conduct and nature of the sentencing hearing persuades us that each defendant deferred to the expertise of his defense counsel, and subsequently made a strategic decision not to speak for himself. Thomas made such an explicit declaration when he declined to make a statement for the presentence report, "because we are in fact planning to appeal...." [1] Thus, the evidence of record does not support defendants' claims that they were *denied* the personal right to

---

1. Thomas also claims that the trial judge failed to comply with Fed.R.Crim.P. 32(a)(1)(A). Although the trial judge did not ask whether Thomas and his defense counsel had reviewed the presentence report, such an inquiry was unnecessary. Defense counsel volunteered that he and his client had reviewed the report and proceeded to comment on it. As noted above, Thomas declined to comment. Thus, the trial judge was not required to ask Thomas whether he reviewed the report, as long as the judge had some means of determining that Thomas had done so. *See United States v. Miller*, 849 F.2d 896, 898 (4th Cir.1988).

allocution. *Cf. Green*, 365 U.S. at 304–05, 81 S.Ct. at 655–56 ("A record, certainly this record, unlike a play, is unaccompanied with stage directions which may tell the significant cast of the eye or the nod of the head. It may well be that the defendant himself was recognized and sufficiently apprised of his right to speak and chose to exercise this right through his counsel.").

■■■■■ In *United States v. Byars*, 290 F.2d 515 (6th Cir.), *cert. denied*, 368 U.S. 905, 82 S.Ct. 185, 7 L.Ed.2d 99 (1961), we held that the trial judge failed to comply with Fed.R.Crim.P. 32(a)(1)(C) and remanded the case for resentencing. *After* the trial judge imposed the sentence in *Byars*, he spoke to the defendant and said, "Now your statement." 290 F.2d at 517. In the case at bar, the trial judge directly addressed each defendant by name *before* the imposition of sentence. Thus, we distinguish *Byars* and uphold the judgment and commitment orders of the district court.[2]

2. Although defendants advance a number of other arguments on appeal, those arguments are without merit.

Thomas initially argues that the trial testimony indicated that the district court erred in denying his pre-trial suppression motion. Thomas, however, failed to renew his motion to suppress or to prove that the trial testimony undermined the suppression hearing testimony of the government's witnesses. Unless the district court is given an opportunity to correct the error, an appellate court cannot review evidence presented at trial which casts doubt upon a pre-trial suppression motion. *See United States v. Longmire*, 761 F.2d 411, 420–21 (7th Cir. 1985).

Thomas next contends that the prosecutor misrepresented the testimony of two government witnesses and, in his closing statement, the prosecutor said that Thomas ran a "satellite office" for the E & Lite conspiracy. Because five witnesses, including one police officer, testified that Thomas sold E & Lite heroin at the Travelers' Motel as a subordinate of E. Gaston, the prosecutor did not misrepresent the trial record as a whole. *See United States v. Sterling*, 742 F.2d 521, 527 (9th Cir.1984) (holding that prosecutorial error does not warrant reversal unless substantial prejudice results), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985).

E. Gaston also argues, on appeal, that the prosecutor made an improper disclosure to the original trial judge. In violation of 21 U.S.C. § 849(a), the prosecutor did inform the trial judge of the government's intent to have E. Gaston declared a dangerous special offender. On E. Gaston's motion, however, the original trial judge recused himself. Thus, this pre-trial recusal of the judge to whom the improper disclosure was made cured the violation. *See, e.g., United States v. Patterson*, 819 F.2d 1495, 1510–11 (9th Cir.1987).

E. Gaston next contends that the district court improperly considered his alleged involvement in the murder of Clifford Gilbert ("Gilbert"), who was an E. Gaston subordinate and local E & Lite distributor. In response to E. Gaston's objections at trial, the district court deleted reference to the Gilbert murder from the presentence report. Even if the district court considered this information, the court did not abuse its discretion. In making sentencing decisions, the district court is not restricted to the proofs at trial. *See* 18 U.S.C. § 3661. Moreover, E. Gaston failed to challenge the evidence presented at trial that connected him with the Gilbert murder. Thus, E. Gaston has not shown a due process violation by raising "grave doubt as to the veracity of the information" presented. *See United States v. Fry*, 831 F.2d 664, 667 (6th Cir.1987).

E. Gaston continues that the district court erred by denying his motion to strike from the indictment all of the overt acts allegedly committed in furtherance of the conspiracy. He correctly contends that the government is not required to allege overt acts to prove a violation of 21 U.S.C. § 846. In the case at bar, however, proof of overt acts committed in furtherance of the conspiracy was clearly relevant to prove the existence of the conspiracy. E. Gaston also argues that proof of overt acts should have been removed from the indictment as surplusage. Fed.R.Crim.P. 7(d). However, "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Climatemp, Inc.*, 482 F.Supp. 376, 391 (N.D.Ill.1979), *aff'd sub nom. United States v. Reliable Sheet Metal Works, Inc.*, 705 F.2d 461 (7th Cir.), *cert. denied*, 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983). *See also United States v. Kemper*, 503 F.2d 327, 329 (6th Cir.1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 824 (1975).

Gaston then asserts a double jeopardy violation contending that the two conspiracies with which he was charged were, in fact, part of a single conspiracy to distribute narcotics. Because he failed to raise this claim at trial, E. Gaston waived any double jeopardy claim. *See In re Grand Jury Proceedings*, 797 F.2d 1377, 1380 (6th Cir.), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 876, 93 L.Ed.2d 831 (1987); *Paul v. Henderson*, 698 F.2d 589, 592 (2d Cir.), *cert. denied*, 464 U.S. 835 (1983). Considering E. Gaston's claims on the merits, the evidence of record shows that he ran two distinct "businesses," one to sell heroin and one to sell cocaine. The cocaine was sold by "salaried" sales agents, from a "crack house" with a unique security

We recognize that the sentencing of Thomas and A. Gaston occurred after a long and difficult trial. The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, is to be commended for the excellent manner in which he conducted these trial proceedings. At the sentencing hearing, however, the judge's Rule 32 instructions met the *minimum* requirements of *Green*. We write to instruct all of the district courts that in this circuit, *maximum* compliance with *Green* is the standard. This court construes Rule 32 quite literally and expects each judge to inform each defendant that he *and* his attorney *both* retain an individual right to address the court. Before the conclusion of the sentencing hearing, *the district court judge must personally and unambiguously invite the defendant to speak in his own behalf.*

Accordingly, the judgment and commitment orders of the district court are AFFIRMED.

system. In contrast, the heroin was dealt in quick hand-to-hand sales, by "commissioned" sales agents who worked out of motel rooms or on the street. Even though E. Gaston maintained a common headquarters, heroin was never dealt from the crack house and there was little interaction between the different groups of sales agents. Thus, the scope and nature of E. Gaston's operations strongly supported the district court's finding of two separate conspiracies. *See In re Grand Jury Proceedings,* 797 F.2d at 1383.

E. Gaston concludes that he was prejudiced by a mistake in the cocaine trial transcript confusing the name of a cocaine trial witness with the name of a heroine trial witness. E. Gaston failed, however, to seek a correction of the record at trial and, thus, waived his right to object. Because he has not demonstrated any prejudice resulting from the mistaken trial transcript, E. Gaston is not entitled to relief. *See Bransford v. Brown,* 806 F.2d 83, 86 (6th Cir. 1986), *cert. denied,* 481 U.S. 1056, 107 S.Ct. 2198, 95 L.Ed.2d 853 (1987).

A. Gaston also argues, on appeal, that he was deprived of a fair trial because the prosecutor suggested to the jury, without evidentiary support, that there had been threats made to government witnesses. A. Gaston specifically objects to questions addressed to recanting witnesses by the prosecutor, such as "Nobody has threatened you?" or "told you that you better not finger them?" By not attacking the basis of such questions at trial, however, A. Gaston waived his right to object. *See United States v. Martel,* 792 F.2d 630, 636 (7th Cir.1986). Moreover, asking a witness testifying for the defense in a criminal case whether he is afraid has been persuasively characterized by the Third Circuit as "a time honored means of trying to impeach the witness by showing he had been intimidated into testifying favorably." *United States v. Adams,* 759 F.2d 1099, 1111–12 (3d Cir.), *cert. denied,* 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985). In the case at bar, the prosecutor believed, in good faith, that the recanting government witnesses had been threatened. Given his "well reasoned suspicion," it was not improper for the prosecutor to question those witnesses at trial. *United States v. Sampol,* 636 F.2d 621, 658 (D.C.Cir.1980).

A. Gaston continues that Kenneth Bell's ("Bell") testimony was mere hearsay and should have been excluded pursuant to Fed.R.Evid. 801, 802. Bell testified that after he heard gunshots, Barbara Skelton ("Skelton") explained to him that A. Gaston was pursuing a man who tried to rob her. Even if the admission of Bell's statement was held to be plain error, the effect of the statement was clearly harmless because it was merely cumulative testimony. *See, e.g., United States v. Smith,* 794 F.2d 1333, 1336 (8th Cir.1986), *cert. denied,* 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1987). Without an objection by A. Gaston, Skelton had testified to the same facts earlier in the trial.

The final claim for disposition is advanced by A. Gaston. He argues that the district court erred by failing to re-read a witness' testimony that was requested by the jury. As A. Gaston concedes, the decision to re-read testimony to the jury is within the trial court's discretion and reviewable only for an abuse of that discretion. *United States v. Padin,* 787 F.2d 1071, 1076 (6th Cir.1986), *cert. denied,* 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 45 (1986). *Padin* warned of the inherent dangers of reading testimony, stating that "undue emphasis may be accorded such testimony," and that "the limited testimony that is reviewed may be taken out of context." 787 F.2d at 1076. Because the disputed evidence was potentially prejudicial and certainly of limited exculpatory value, the district court did not err in its decision to not re-read the testimony.